The first case for argument this morning is 17-1395, Atlas v. St. Jude. Mr. Topek, whenever you're ready. Good morning, Your Honors. I'd like to focus today on the transmitting limitation. I have a few things I'd like to say about claims 11 and 21, but I think it might be good to start with a passage from this court's decision in Medtronic, which was construing some of the limitations it issue here in talking about the purpose of this patent. So this is on page 605 to 606 of Medtronic. If the hub does not define the intervals when the hub will transmit to the remotes when each remote will transmit to the hub, multiple communicators, e.g. the hub and a remote or two remotes, could transmit simultaneously and their signals would collide. Thus, the hub sent information must indicate both the start and end time of the intervals of each communication cycle. So with that in mind, I'd like to start with the transmitting limitation and how it should be properly construed. The claim limitation says, the hub transmitting information to the remotes to establish the communication cycle in a plurality of predeterminable intervals during each communication cycle. The board construed that to mean that, quote, the transmission limitation only requires the hub to transmit the communication cycle and at least two intervals and not all of the intervals within the cycle. That cannot be reconciled with this court's decision in Medtronic and in St. Jude, which said... Let me just ask you, just so we can take this one step at a time. The word plurality appears in the claims. What is your definition? What is your view of the word plurality? It means that there must be a plurality of intervals within the cycle. There must be two or more and the board said... Well, the board said that regardless of how many intervals are in the cycle, the hub need only transmit the required information for a plurality, which could be only two out of a larger set of intervals. And the earlier decision, I want to hear what you have to say about our earlier decision because I didn't see how our earlier decision really resolved that question. It certainly didn't squarely address it. It wasn't an issue. But what this court said was that the hub must, quote, define and transmit the start time and duration of each communication cycle and its constituent intervals in advance of any transmission opportunity slots. So this court used the term constituent intervals, which implies it's the intervals that make up the cycle. Maybe the cycle has two, maybe it has a thousand. However many it has, those are the constituent intervals and there must be duration and start and end time for each of those intervals sent by the hub before the remotes can transmit, which makes sense because the passage I started with made clear that one of the purposes is to avoid collisions. So if you don't have that information for all of the intervals, then... But then aren't you reading out the word plurality in the claim? No, I don't believe we're reading... So what work does plurality do under your view of how it... It defines how many intervals can be within the cycle. It doesn't say... It doesn't limit the number of intervals that the hub must send information for. So you could have, again, you could have five intervals. You could have two intervals. But however many intervals there are in the repeating cycle, the hub has to transmit information for all of those intervals. Because if it doesn't... Is this a claim construction issue? Well, there are both claim construction issues and then within that construction, the petitioner disputes, you know, even under our construction, whether Natarajan teaches the limitation as we've... So, I mean, look to me like the claim construction issue is really focused at Appendix 41. It's in the board below where they deal with the question of what the antecedent basis for the plurality is. Isn't that what the fight is over? I mean, yes, the fight is over. So if you lose that, I mean, you said you argued that the antecedent basis for the plurality is not intervals. And so if we agree with the board's interpretation, then you don't have a leg to stand on, do you? We don't dispute that for the transmitting limitation, if you agree with the board's construction, then there is substantial evidence that Natarajan teaches the transmitting limitation under that construction. We'd still have to deal with Claim 11 and Claim 21, which have additional limitations. Right. But I mean, what is your argument on this core claim construction issue on the antecedent basis for the plurality? I didn't really see it so much as an antecedent basis issue, so much as just the which intervals need to be addressed by the HUB. And under what this court held before, what's discussed, I could talk about what's in the specification, the file history. It talks about constituent intervals. And it also talks about the need to avoid collusion. You have a language in a previous opinion that you're trying to chew on yourself into, right? Well, I would say that we were bound by that language in that case, and that issue was not squirrelly before the court. But even if we go beyond the constituent intervals language that was in the court's opinion in the Medtronic case, I'd point to some other supporting evidence as well. The specification, and this actually was discussed in Medtronic. Does the board appreciate your argument based on the previous case? The arguments were made. I mean, the board did not agree with the argument. Didn't address it, did it? Did they address that argument in their opinion? I believe they just said it didn't resolve it. I would have to look to remember, but they didn't accept the argument, certainly. The specification talks about, this is a... Well, they did. I mean, there was supplement. They requested supplemental briefing once the client construction came out in the other case. Correct. So there was supplemental briefings, a clue they considered it. Yes. That's not the same case you're talking about. The supplemental briefing was over the Atlas case, right? It was both decisions that came out basically at the same time. So the board had, after, and I was not in the proceedings below, but after the trial, before there was a decision, the decisions came down from this court construing the transmitting limitation, which had not really been the area of focus in the IPR previously, but under the construction that created new issues that the parties then addressed. And we made our arguments based on transmitting at that time after this court had rendered its construction. So it was addressed. I just, sitting here, I don't recall exactly what the board said about this court's construction or decision in Medtronic, but definitely did not adopt the interpretation that we had. What is wrong with the board's conclusion that the antecedent basis for is not intervals generally, but each, the plurality has set forth in the parent claim? The issue is the, among others, the collision issue that this court noted in Medtronic, that if you have an interval in which there's uncontrolled communication, which to jump ahead a little, that's period C in Natarajan. It's a contention-based interval. The remotes can send whatever they want, whenever they want to, you're going to have collisions. And as the court noted in Medtronic, that was the very purpose of this patent, was to avoid collisions. And so you don't, you will continue to have collisions, you will have wasted power, which again is something that the patent was focused on, if you have uncontrolled intervals. And the only way to ensure that the intervals are all controlled is plurality of intervals needs to mean the constituent intervals, all of the intervals that are within that cycle. But does the claimed invention have to avoid all collisions? Maybe it's an imperfect, imperfect recitation. It was certainly central to the Medtronic decision, was the notion that you needed to avoid collisions. Now there is a limited exception in our patent for the TSOB request interval, which my colleague certainly pointed out in his brief. That is a limited exception that goes to a different claim, it's claim three, and that is a contention-based period, but it's solely for the purpose of requesting bandwidth in the next cycle, primarily for new remotes, who necessarily couldn't be scheduled. So overall, as the court found in Medtronic, the purpose of this patent is to reduce collisions. Can you just tell us quickly in the real world what this invention is used for? I gather hospitals use this? What does this do? Who transmits what to who? Nurses to doctors? What's happening here? It's a communication protocol. It isn't specific to any particular industry or any particular usage. It's not unlike CDMA or TDMA or other kinds of protocols like that that are used for... It's just sending messages from a central hub out to remote places and receiving information back. That's what it's about? Correct. In broad strokes, yes. The St. Jude case involves medical products of St. Jude, so did the Medtronic case. It's not specific to those industries. Those are an issue here. Just a few other things on the claim construction point and transmitting I did want to point out. The specification 27 line 57 talks about control information that, quote, defines the starting time and durations of the subsequent intervals of the present communication cycle. So it's talking about the intervals as a whole. It's not talking about at least two of a greater set of intervals. In the file history, this is at appendix 408, we distinguished the Natarajan reference and said, quote, as a result of this scheduled protocol, there would appear to be more power consumed than if the complete information concerning all the intervals and functions during each complete cycle is communicated at one time. So we did talk about the notion of all intervals. Then I would just point to petitioner's positions in the IPR. Among those was, quote, Atlas's arguments are inaccurate because Natarajan 1992 transmits at the start of its communication cycle the length of all intervals in the cycle. So before the construction came down, that was the way that that had been phrased. The petition also identified Natarajan's cycle as having, quote, multiple intervals including periods A, B, and C and that the duration of a frame was subdivided into three intervals. I mean, it wasn't in the context of a claim construction argument, but nonetheless, they were at least in it. So we believe that makes clear that transmitting requires that the start time and duration and time of all the intervals must be transmitted from the hub to the remotes before the remotes can begin transmitting. From there, there are two different reasons why Natarajan does not teach that limitation under that construction. One is specific to period C. The other is the time slots within period C. And again, the board found that basically that period C was irrelevant because there only needed to be two intervals addressed by the hub when it sent the control information. So as to period C in Natarajan, the argument that the board accepted was that the length of period C is broadcast in header A-H and header B-H, which both occur before period B, which is the first time that the remotes can transmit. But in doing so, it assumed that the length of period C couldn't change between those different headers and between those different time periods. And there was not substantial evidence before the board that would support that conclusion. The limitation itself says the hub will, quote, establish the length of the intervals. And this court in Medtronic defined that to mean set up on a firm or permanent basis. So because Natarajan leaves open the possibility that the length of period C can change, then the remotes do not have the necessary information and start and end times for period C until they get header C-H, which occurs after period B. And I think everyone agrees that once we come to a conclusion of which intervals matter, that the length of those intervals has to be transmitted to the remotes by the hub before the remotes can begin transmitting. You're well into your rebuttals, so you want to retain some of it. Oh, I misread the clock. I apologize. I do want to retain it in the time slots. Then I'll stand on the briefs. As to Claim 11, I think the board misconstrued revoking. When you actually look at BELLA, it says that the remotes interpret the lack of communicating as a cancellation. There's not an actual revoking. And as to Claim 21, it's as simple as A-H, B-H, and C-H are not the same. And under the two frames limitation, they must all be the same. I'll save any time for revoking. Thank you, Chief Judge Prost, Matthew Smith, Smith, Bluch, LLP, for the St. Jude Appellees, although I'll be arguing for all of the appellees. Let me begin where Mr. Topic left off, and that is the factual distinctions over the whole that it seems, because ATLAS is really arguing under the wrong standard. APJ Pettigrew, in her two decisions, which were quite thorough and detailed, made numerous factual findings that are supported by substantial evidence, citations to the text of the references themselves and to the testimony of St. Jude's expert, Dr. Haas, and really unencumbered by any contrary evidence in the record. ATLAS below didn't submit any expert testimony to the Board, did not take advantage of its opportunity to cross-examine Dr. Haas, and so on appeal, ATLAS is really left with the assertions of its attorneys about the facts of the case, contrary to findings made by the Board, supported by substantial evidence, and often for the first time on appeal. What's your response to Mr. Topic's assertions about plurality, meaning all of the intervals? So, first I would look at the language of the transmitting limitation judgment. The transmitting limitation begins by saying, the hub transmitting cycle establishing, I'm sorry, that's claim one, let me go to claim six, which is the one that you called representative. Claim 14 says, the hub transmitting information to the remotes to establish the communication cycle and a plurality of predeterminable intervals during each communication cycle. So the language, in a very straightforward way, makes clear that the transmission of information has to establish a plurality of intervals. What I heard Mr. Topic saying was, the claim language has a sort of additional implicit limitation that the communication cycle is entirely divided into this plurality of intervals. In other words, the plurality of intervals is all the intervals in the communication cycle. And that's just not what the language says. Well, I understood him to say that, well, if it's not all the intervals, then there would be a conflict. And that's what this is intended to avoid. Yes, and that is correct. That is what he said, Your Honor. But in a very real sense, conflicts are allowed in the 734 patent and in real world systems. In the 734 patent, I believe every single embodiment in the patent has the TXOP request interval 86, which Mr. Topic referred to. That is a contention-based interval. And what that means is, the remotes are allowed to transmit at the same time. And if their remotes happen to interfere, they won't get an acknowledgment back from the hub, so they'll figure that out. But the design of the system allows for that. And so a claim construction that would exclude that particular part of the 734 patented embodiments would effectively exclude everything in the specification. And I think that's consistent with how prior panels of the court decided, in the Medtronic and St. Jude cases, the construction for the 734. What the court was addressing there, of course, is I think the colloquy... But Mr. Topic points to language in Medtronic saying that you don't want to have collisions. Yes, I think that is correct. What do you do with that language? Because the 734 patent does not require perfect avoidance of collisions, as Judge Lim's question pointed out. There is an advantage to avoiding collisions, for example, in the scheduled allocated transmission opportunities of their remotes. That is, some remotes are going to get specific... But the language in that earlier opinion should have said, preferably, the invention preferably wants to avoid collisions. Yes. But that's not what... He's hanging his head, isn't he, on language in a former case? Yes, he is. And it's reasoning leading to a distinct claim construction that the court came up with, which was put before it by the parties. And that question addressed, of course, when this establishing transmission takes place, not what the plurality of intervals are. And in fact, the court's construction leaves open that the plurality of intervals are not all of the intervals in the case. The court had before it a narrower construction in the St. Jude case. And the narrower construction would have required this scheduling information to be transmitted in the prior communication cycle. So the remotes would have the entire schedule prior to any interval within that communication cycle, and that would obviously be the most efficient formulation. The definition of that limitation in the district court in the earlier St. Jude case said you have to transmit all three, right? In the St. Jude case, the court held that the establishing transmission in the transmitting limitation has to occur in the prior communication cycle. So it was a timing question more than... In our court, I'm talking about what happened in the district court in that case. Right. In the district court, the district court also addressed the same timing question and found that the establishing transmission has to take place in advance of the entire communication cycle. And that was the claim construction that this court in part overturned and found a broader construction, that the transmitting, that the transmission of the establishing information can come later. But that means that the remotes don't have that scheduling information for at least some part of the communication cycle. And so that's why I say that the court's prior opinion leaves open that the remotes are not all of the intervals in the communication cycle because the court's claim construction allows that schedule to come in the middle of the communication cycle or even towards the end as long as it's before the first opportunity of the remotes to transmit in that cycle. So the court's prior claim construction does not say in any way, shape or form that all of the intervals have to be established through that establishing transmission. And I don't think there's any support in the 734 patent specification for that idea either, at least not support that is sufficiently strong to get you past the clear language of the claims which says transmitting information to establish a plurality of intervals. The 734 patent talks about power savings, for example, as being significant or considerable but not perfect, not maximal, not optimal. And that's really the kind of construction, But even if ATLAS could rewrite the transmitting claim language to say something like there is a communication cycle that is entirely divided into a plurality of intervals such that there are no other intervals and there's a transmission to establish those intervals, that wouldn't distinguish the Natarajan reference. And this is part of the problem with ATLAS' case. The board held several times in its opinions, and I'm referring specifically to appendix pages 18 to 19 in the final written decision and in the rehearing decision, appendix pages 38 to 39, that by the time of the first interval in Natarajan's communication cycle, that is interval AH, all of the constituent intervals of the Natarajan cycle, that is AH, A, BH, B, CH, and C, have had their timing established. And that's because in interval AH, Natarajan transmits the timing of all of those intervals, the length of all of those intervals. And so at that point in time, all of the remotes of Natarajan, right in the beginning of the communication cycle, know the entire length and start time of the communication cycle and all of the constituent intervals therein. So even rewording the claims in the way that Mr. Topek suggested in his opening argument wouldn't get you past Natarajan. The board specifically made that finding, based that on Natarajan itself, in appendix page 321, there's an actual figure which points out what is in interval AH, based that also on Dr. Haas' testimony in paragraphs 115 to 123 of his declaration. And there's no contrary evidence. The only argument that ATLAS puts forward on appeal is that there is a possibility that the timing of the last interval, interval C, could change. But that really gets the standard backwards. The question is not whether there's some possibility that it could change. The question is whether the board found that it didn't change, which it did on appendix page 39, and whether that decision was supported by substantial evidence, which it is based on the text of Natarajan and based on the testimony of Dr. Haas. And I don't know how ATLAS can actually get past that on appeal. The transmitter limitations, I'm switching limitations now, is similar to the extent that the board made specific findings that are contrary to the arguments that ATLAS is now making on appeal, to the facts ATLAS is asserting on which its arguments depend. Those findings were supported by substantial evidence, and ATLAS really hasn't shown that the board, or that no reasonable person could have come to a different decision than the one it is advocating. In the transmitter limitation, the remotes are required to power off their transmitters during times other than those which they would be allowed to transmit. And ATLAS's argument is that in Natarajan's period C, that last contention interval, that the remotes are not in fact allowed to transmit. But the board specifically found that the remotes in Natarajan can transmit in interval C. This is on appendix page 14 and in the rehearing decision on appendix page 40. Even though ATLAS did not make this argument to the board, the board specifically made findings that the remotes in interval C can transmit. And so the remotes in interval C are allowed to transmit during that contention interval. ATLAS's argument here conflates being allowed to do something with having some guarantee of success. ATLAS is essentially saying that because interval C is a contention interval, there's a possibility that two remotes could transmit at the same time, and their transmissions would interfere with one another. But interference is always a possibility in radio systems. It doesn't have to come from within the system. It could come from a microwave or a garage door opener or something like that. But the more important point is that if the remotes are allowed to transmit, that's enough under the claims. They don't have to have a clear path to transmit. They don't have to have free access to the airwaves within the radio system. And that is, in fact, what the board found. And ATLAS doesn't show that the board's finding was not based on substantial evidence. For the revoking limitation, and this is specific to Claim 11, which is the only claimant issue that has that limitation, the hub is required to listen to the airwaves. And certain remotes may have a sort of standing reservation to transmit, so like a standing 7 o'clock reservation at a restaurant. In the Natarajan system, the remotes can cancel that reservation, but they have to send a message to the hub, essentially. And then the hub cancels the reservation. The claims require that the hub listen to the airwaves, and if the remotes don't use that scheduled opportunity to transmit, then the hub will cancel that reservation, essentially. That's why we have a secondary reference, which the board sustained, the BELLA reference, which teaches the correct cancellation mechanism. And in the BELLA reference, the communicators send out reservation requests. Everybody notes that a certain time is reserved for a certain communicator. But if the communicator, the radio, doesn't transmit during that time frame, the other remotes are going to listen to that. They're going to hear the absence of any transmission, and they're going to use that as a signal that they can cancel the reservation. So it's like not showing up to your Thursday night standing dinner reservation and having the restaurant staff simply cross you off the book because you didn't show up. The board found, specifically, all of those facts, that that's how the BELLA system worked, that my characterization of how the Natarajan reference worked was, in fact, how it worked. And the board found specific motivation to combine the Natarajan and BELLA reference, and that's not challenged by ATLAS on appeal. All of those facts are based on citations to the BELLA reference and citations to Dr. Haas's testimony. The only thing ATLAS is saying on appeal is that in the BELLA reference, the communicators just stop, and that's the end of the story. But that's not what the board held. The board held that in the BELLA reference, and this is specifically the citation on appendix page 23, column 11, lines 3 to 9, that the communicators in the BELLA reference listen for the absence of transmission and then make the decision to remove the transmission slot that's been reserved for the other communicators. And so here again, ATLAS is simply asserting facts on appeal, often in this case also for the first time, that don't meet the standard that ATLAS has to meet. Lastly, in the last 30 seconds, I'm going to talk about Claim 21. This is a very short argument in the opening brief. It's about two-thirds of a page. And ATLAS states, in header AH, Nadarajan establishes the periods, but header BH only establishes when the remotes are allowed to transmit in period B, and nothing about the other two intervals, namely when the hub is allowed to transmit frames to the remotes and when each remote is expected to receive a frame from the hub. That's on page 42 of the opening brief. That simply ignores the board's relevant findings. The board found that in interval BH, the Nadarajan hub establishes BH, B, CH, and C. And the board specifically found that those two other categories that ATLAS points out here were established by that transmission. So ATLAS, again, is simply arguing under the wrong standard. It needs to show that the board's findings were not supported by substantial evidence, and it simply hasn't done that. Thank you. I'll restrict two minutes. Thank you. As to the TSOP request, it is not correct that that is present in all of the claims, or even any of the claims it issued. That's the period that was identified as being contention-based. It corresponds to Claim 3, which is not at issue. If you look at Claim 3, you can see it specifically talks about the TSOP request that is not called out in the claims that are at issue. There was also argument about collisions could still occur. Just to go back to the Medtronic decision, because there's reasoning and then there is a conclusion that comes from that reasoning, and the conclusion is what went into the claim construction. And what the court said is if the hub does not define the intervals when the hub will transmit to the remotes and when each remote will transmit to the hub, multiple communicators could transmit simultaneously and their signals would collide. That's the collision issue that we've mentioned. And then the court goes on to say, thus the hub sent information must indicate both the start and end time of the intervals of each communication cycle. So it wasn't talking about it being preferred. It was talking about being essential to constrain that claim. That's an essential part of what the claims require, and that's why in addition to the Period C issue under Natarajan, meaning that the time period could change, the individual time slots within Period C are contention-based and run squarely into the problem that was identified in Medtronic and was the reasoning that led to the construction. Last point I wanted to make was on Claim 11. I think counsel has sort of misconstrued even what the board has said. This is referring to the BELLA records. Other stations monitor packets transmitted on the network and interpret the lack of packets in the time slot as a cancellation of the reservation. So BELLA is not a system in which the other remotes cancel different slots. It's one in which the remotes cancel themselves and then they're interpreted that way by the other remotes. Thank you. I thank both sides. The case is submitted.